Case number 24-23. United States of America v. Oscar Ramiro Ortega-Hernandez, also known as Oscar Ramiro Ortega-Azalez. Mr. Smillian for the Azalez, Mr. Cahill for the Evo. Good morning, counsel. Mr. Smillian, please proceed when you're ready. Good morning, your honors. For Smillian, on behalf of Mr. Ortega-Hernandez, I'd like to reserve two minutes for rebuttal. 1363's enhanced offense is not a 924c crime of violence for, by my count, about five separate but interrelated reasons. I'd like to start with what I think is the simplest way for the court to resolve this case, though it's by no means the only way to do so. And that is 1363's offense is not a 924c crime of violence because it can be committed by force against one's own property and by putting one's own life at risk. This is so because of the text of the law, as well as its evolution over time. Smillian, can you talk first about the procedural bar issue here? So, Johnson was decided while Mr. Ortega-Hernandez's claim was still pending on appeal. And it wasn't raised on direct appeal. So, why should we consider the issue now? So, Johnson came down after his appeal was fully briefed, but before a decision issued? It was before oral argument. Johnson was decided in June of 2015 and oral argument was in September of 2015, which left plenty of time to file 28J letter, supplemental authority. So, I think the court should look at the Tenth Circuit's decision in Garcia, I believe that's out of the Tenth, where a similar situation arose. The appellant had not made a Johnson claim and Johnson came down before a decision issued in the case. And the court explained that a 28J letter is not the type of letter one should be using to raise brand new arguments. So, would it have to have been a 28J letter because cert was granted before? You correct me all the time if I got it wrong. But as I understand it, cert gets granted in Johnson. And that's before the opening brief filed on direct appeal. So, cert is granted in Johnson, but the court actually didn't grant cert on the question that it ultimately decided, which is that the residual clause was void for vagueness. It had argument and then reissued a new question. And that question, I believe, came down in December of 2014, if I'm not mistaken, which is after the opening brief was filed. Was it before the reply brief? It was before the reply brief, but after the opening brief. And as we all know, you have to raise your issues in your opening brief so you don't get to raise brand new issues. I mean, and that's a whole brand new claim. Would you, if that question had been sent out before the opening brief, Johnson had said that the world knows now that we're looking at this question, would you be making the same argument? I would probably be making the same argument, but I would be in a more difficult position. I think there's certainly case law that talks about procedural default being about the time of the plea, the time at which you're admitting to guilt, rather than necessarily on appeal. But candidly, I just don't think it matters here because Johnson came down. Because we know the law can change on direct appeal, which is, I think, what Judge Rao was alluding to. The law can change on direct appeal in a way that renders something plain error. So it would be a successful argument on direct appeal, even if it requires the plain error argument. If there's been a Supreme Court decision that's come down in the interim that then sets the law in a particular way or a circuit decision that's come down in a particular way. So that's true. I mean, I don't think it would have been plain error here because Johnson was about ACCA. It was not about 924C. I mean, we're raising a Johnson claim. I think Johnson animates our whole argument about 924C. And that's why the courts went the way they did on 924C. But that Garcia decision, the court notes that a notice of supplemental authority is not the proper way to raise a new argument. And specifically notes that it would have been particularly inappropriate in that context. Because unlike in an ACCA case, I mean, Johnson came down. And then it was years before it was clear that its rule applied to 924C, even though the logic, you know, was laid down. I mean, I'm not sure it would have to be after Davis. We did not wait until Davis. We filed within, you know, the time the Johnson decision came down. But I think it underscores the fact that, you know, once you filed your opening brief and, you know, the re-decision doesn't talk about when certs granted. The re-decision talks about when Supreme Court case law is overturned. So I think the proper point to look at is going to be when the Johnson decision came down, which is, again, is after briefing. And not when the Johnson question came out.  Correct. But I think, I don't think, first of all, I just don't think the court needs to decide that for this case because in this particular case. In order for us to consider the issue, you still have to show cause for us to consider it because it wasn't raised on direct appeal. And given that, you know, cert was granted and Johnson was decided, how do you, how do you surmount the cause bar? So I mean, for the reasons I was saying, I think we look at the cause bar. Johnson was not decided and cert on this particular question wasn't granted until after the opening brief was filed. And, you know, Reed says you have cause for failing to raise an argument when. It's obviously not so novel anymore. And there's no external, I mean, there has to be an objective factor external to the defense that impeded. Well, and. For us to raise the issue.  I mean. How do you, how do you meet that standard? So that's, I mean, that's James and Sykes. And that is to the Reed decision set out two ways in which or three, in fact, ways in which something is considered novel. One is when there's a Supreme Court decision saying, you know, you can't raise this particular argument. Another is when there is a near universal opinion in the lower courts about the proper way for this to come out. And if you look at, I believe it's the 4th Circuit's decision in McKinney, the court, in addition to noting that Johnson. You know, had overturned prior precedent on the residual clause. It also noted that no one was saying, I mean, no one was raising the argument that the court could find anywhere that 924 C residual clause in particular was unconstitutionally void for maintenance. So, I'm happy to return to that of another. How about on the point you started with the questions on the point you started with? So, the government makes the argument on the subject of procedural default. That's actually that issue. The use of the text on against another person against the proper against what was one's own property as opposed to the property of another property of another. That that hadn't been flagged early enough. So, I think the way we think about waiver is about claims rather than particular reasons. And you're at liberty on appeal to raise an additional reason for your overarching claim. I think it's clear if you look at the certificate of appeal ability issued here, it says, and I'm slightly paraphrasing. That the 1363 enhanced defense is not a 924 C crime of violence. And this is just an additional reason for that. And I'd also note, though, I don't think this is necessary for the court to focus on that. It does come up in some of the briefing below, particularly in sort of most notably in the reply and reconsideration. There's a discussion of how this defense can be committed by putting one's own life at risk. And in particular, it talks about how the word any is a broad term and cites a Supreme Court proposition. Or excuse me, a Supreme Court opinion for that proposition, which is the same Supreme Court opinion we cite in our brief here. And I'd also note, I mean, there's a whole discussion about whether there's a realistic probability of that happening. And it is fleshed out. And I don't think, I mean, the briefing below is excellent and very, very detailed. And I don't think the fact that this is sort of among the least fleshed out points should be held against us. Because we did such a good job on everything else. Do you act maliciously towards yourself? I think you can. And I think you can, I mean, or at least you can willfully and maliciously, yes, towards yourself. So I think, I mean, I think if one were to commit suicide in order to have your family collect insurance money, that would be a malicious action. I mean, in some sense, it's malicious against the insurance company. But you're not using force against them. You're using force against yourself. Or if you were to deliver. You're going after insurance. You're affecting the insurance company's property, not your own. What I'm talking about is if the point here is that you've damaged your own body or your own properties, your sort of, you know, the arguments here. I just, willfully and maliciously would seem to me to override the, any argument that you have. Because it just, you know, maybe you can conceive of it, but it seems a very unnatural way of thinking of those two words as allowing damage to yourself. You know, you scrape your hand in the process of committing the crime. But that's really what Congress was concerned about. So I think, I mean, I think we win. So I don't want to not engage with your Honor's point about persons. But I think we win even if you think, well, you could maliciously do it as to property but not as to person. Well, either one, though. I'm wondering if willfully and maliciously don't foreclose a reading or don't naturally foreclose a reading that this applies to the defendant's own, either own body or injury to the own self or to its own property. The perpetrator's own property. I don't think so because I think you can maliciously injure your own property for some of the reasons I've stated, collecting insurance money. And I understand your Honor's point that. It's different from willful and intentional. What makes it malicious when you do it to yourself? Because you're doing it sort of for untoward ends. Well, I mean, it's not untoward in that person's. I mean, I'm just not sure. It doesn't. Remember, we think of malice as something targeted at somebody else. That's normally how it's used. Are there cases where malice, maliciously, that word has been used in criminal provisions to refer to, to include actions targeted at oneself, the perpetrator targeting oneself? My recollection is it does, but I candidly don't have a specific case for you right now. Can I just ask why? Why does it? I think I missed something. Why does it matter if it's willfully and maliciously directed at oneself? Because I thought what we're talking about is 1363. And 1363 only deals with property. It could be your own property. I totally get that. Yeah. Why? Why? Why did you have? Why do you have a suicide hypothetical as opposed to suicide against your own property? So, I was just attempting to engage this question about a person, and so that's why I was using that as an example. But I agree that this is a statute-targeted property, and one can commit malicious actions. 944C covers persons, obviously. It covers persons. Yes. So, 1363 itself, unless I'm missing something, that covers property. So, the question, there's still a question whether you can maliciously and willfully destroy your own property. Yes. Yes. I mean, it does seem more natural to talk about willfully destroying somebody else's property as opposed to your own property. But does the question about willful and malicious destruction of yourself actually, is that? Julie, I think Your Honor is absolutely right. The court doesn't need to decide whether it's about maliciousness against yourself, because this is a statute-targeted property, and one can take malicious actions. Well, the intention includes both bodies and property. Yes. I am assuming by my question that your mens rea, there's at least arguments in the case that it carries through. This might not be correct, but even if we assume it carries through. So, I don't think, if we are, I'm assuming that we agree, as is my position, that you can commit this action by using force against your own property, but you can't do it by putting your own life at risk. I still think that's not an I-24C crime of violence, even if we're in the divisibility world, because the I-24C crime of violence definition requires it to be force against the property of another, and as to the life-at-risk element, there's a Borden problem. You don't need to have force targeted at another person. We in the government agree that this is essentially a strict liability after that point. So, I don't think you get to this being a crime of violence. You read the life of any person part to be the life of any other person, but you think the property part. So, to be clear, I don't. I'm just trying to engage with, I think, what I had thought you were getting at, which is that we can resolve this just on the property issue, and I could be wrong about whether it can be life of another person for Judge Millett's maliciously point, and to be very clear, I don't think that's right. I think you can maliciously put your own life at risk by injuring your own property. Injuring your own? I see. You destroy your own property in a way that the shrapnel from the property could put your own life at risk, and you think the statute actually covers the life of any person being. I mean, it could be read to mean that the property can be your own property, but the life of any person means somebody else. Right, and I'm saying we win no matter what, and I apologize if my answer on that wasn't clear. And to your point, maliciousness is, I don't think the malicious mens rea runs through the whole statute. It just goes to the property. It doesn't go to the life of another, and that's why there's a board problem. Can I just ask you on the, unless there's further, I don't want to stop the line of questioning on this, on the text of, so you've got a lot of hypotheticals about how, you know, you can kind of trivially injure a little bit of property, and how can that possibly be a crime of violence? So just on the words of 924C, suppose that it didn't, it doesn't say, for purposes of this subsection, the term crime of violence. And suppose 924C speaks just in terms of predicate crime as opposed to crime of violence. I'm just trying to think of the word violence out of it. Then what is your argument on the text that if it just said, for purposes of this subsection, the term predicate crime means an offense that is a felony and has as an element, and we'll assume it's an element, the attempted use, the threatened use of physical force against the property of another. Why isn't 1363 put aside here of another? Why isn't it all about use of physical force against property? I don't want to resist your honest hypothetical, but I think the Supreme Court has told us we can't take the word violence out of this statute. I'm just trying to figure out how much work that does. So if we didn't have, you may, you still have your argument on that it does say violence. Of course it does. I'm just trying to figure out how much work has to be done by that word, given the rest of it. If it just says predicate crime and predicate crime has as an element, the use, attempted use, or threatened use of physical force against the property. Do you agree that 1363 then would be a predicate crime? I think it would be a certain, I mean, we have a much, much harder argument. So then if it's really all about the word violence, then I completely understand your point. And I know that the Supreme Court and I totally get the Supreme Court's decisions that say you have to construe the words in light of the word violent, which makes a lot of sense with respect to persons. What is this construction, as opposed to just a difficult hypothesis? What is the construction of the words that you think works when you, you don't disagree that property offenses can count as crimes of violence? No, not under 924C, I don't. Right, so and under 18 U.S.C. 16, I mean, it's all over the U.S. Code that crimes of violence include crimes against property. And then what is the, how do we construe 3A vis-a-vis property in a way that works? I'm sorry, I think I've lost it. I think I've lost your question. We have to construe the words, has as an element, the use, attempted use, or threatened use of physical force against the property of another. What is your interpretation of those words that would fence out 1363? I think my interpretation is that the phrase physical force requires violent force because that's what the Supreme Court has taught us in Curtis Johnson. I also think it's notable that even when the Supreme Court is interpreting other aspects of this definition, it is returning to the idea that we're defining a crime of violence. That's the Supreme Court's decision in Leocal and Borden in particular. And if you read Leocal, it specifically says we cannot forget that we're interpreting the term crime of violence. And then what is the interpretation, though? Because why doesn't 1363 count? If it's violent, I take your point, it's violent force. I mean, I just don't think 1363 criminalizes violent force because it can be committed by acts of nonviolent force, such as actions like graffiti. What would the statute have to say? The underlying statute would have to say violent force. What was an example of a property offense that qualifies? So I think arson, when you define it as property of another, would qualify. And why is that? Because actions like burning or exploding, which is often how arson statutes are written, are violent force. I mean, that offense just can't be committed by actions like petty vandalism, actions like graffiti. So it's the quantum and kind of force that's used against property per the underlying predicate offense. Yes. It has to be compatible with something that we would normally think of as violence. Correct. I think that's right. And I think it's also notable that part of what the Supreme Court has taught us when we're thinking about this is whether the definition of force that we're considering is force associated with a misdemeanor, a common law, or a felony of common law. And the definition that the district court was looking at here and that the government is advocating is associated with misdemeanor or common law, which is malicious mischief. And so I think for the reasons in Curtis Johnson, it would be inappropriate to adopt a sort of just pure injury definition as to property under the circumstances here. Why is something like graffiti and spray paint not, you know, why is that not encompassed? I mean, the Supreme Court says that, you know, with respect to people, even conduct that leads to relatively minor injuries, you know, can count, you know, like cuts or bruises. I mean, why isn't graffiti more like that? I mean, I know it sounds sort of plausible, like, well, graffiti is just not a crime of violence. And throughout the briefing, there's, you know, a lot of sort of, you know, claims that crimes against property just don't really count. But if you analogize it to crimes against persons, why isn't something like spray painting? So I don't, I just don't think it's appropriate to analogize or to take the definition that the Supreme Court set out in Curtis Johnson and apply it to property. But why? But why? Why would it be different? I mean, you know, shouldn't there be consistent usage in the statute? I mean, there's a parallel structure between property and persons. And so relatively minor injury to persons can count. And maybe you just don't think property crimes are, you know, I mean, obviously crimes against property are different than crimes against persons.  So, I mean, I think I'm absolutely relying on the fundamental intuition that crimes against property and crimes against persons are different. I think the principle of consistent usage doesn't apply here for sort of two reasons. One, because that's how the Supreme Court has been interpreting it as not using consistent usage. And because I think there are intuitive reasons to think that makes sense. First, you know, Curtis Johnson adopts one definition of force against persons in the assaultive context. That's pain or injury. And in Stoeckling, the Supreme Court adopts a different definition, which is overcoming the will of another. And that's in the robbery context. And I think it stands to reason that the property context would yet be another instance in which we have a different sort of underlying definition of how we're thinking about physical force when we're talking about property crimes. And I just think the definitions the Supreme Court has adopted for force against persons don't map well onto property. I mean, you look at the definition in Stoeckling, which is overcoming someone's will. It just doesn't make sense in a property context. You know, a wall doesn't have free will. And similarly, when we're talking, though, we're using the Curtis Johnson definition consistently here. But we have an analogy with property. I mean, you have to maybe overcome, say, a fence or, you know, like a dog that is, like, in the yard or, you know, whatever it is. Like, there might be different kinds of ways of protecting property. I mean, the Supreme Court suggests that you, you know, even like minor resistance from a person can count. And, you know, there could be similar analogies with property. I mean, you are, you know, breaching private property when you go and you spray paint on a wall. So, I mean, I don't think that's right. And I also resist the idea. I think the Supreme Court has. Why isn't it right? I think the Supreme Court has sort of been all over the map, quite frankly, about what is enough force against a person. And it has said, you know, it said this pain and injury definition in Curtis Johnson. But if you look at the Supreme Court's decision in Castleman, it actually suggests that's a misdemeanor domestic violence case. And the court suggests that actions like pinching or shoving or slapping might not be violent force. They were in the misdemeanor domestic violence context, but they weren't necessarily in a just a regular crime of violence or violent felony context. And then in Stokeling, that sort of reference goes away. And then when you reboard in, it's citing that part of Castleman again. So, I actually don't think the Supreme Court is really clear on. And it may be that minor force is not enough. I just am not sure we've had that case yet. Well, is it a lack of clarity or is it that so humans, you can both have the force exercised by the perpetrator. But they also look at the impact of the force on the person. They're just looking at force from two sides. They're not leaving it just in what the perpetrator does, but how, what the impact is on the person. And it's harder to do that with property, right? If you leave someone locked out in the cold, or you don't give them water, and they suffer physical harm from it, that can be violence under Delegati. But if you don't water the lawn or leave a house out in the snow, we don't consider that violence against the property. So, I don't know if it's inconsistency. It's just looking at it from two angles for people in a way that you don't do necessarily for property. So, I think the court is right that Delegati is not illuminating for property. Yeah, Delegati doesn't map well onto the property context for the reasons that you just stated. But what I'm wondering is, this all seems to me, Curtis Johnson says it's, you know, causing pain or injury is what we mean by physical force, violent force. And at the time, the second half of 1363, the Enhancement Provision was enacted. Black's Law Dictionary actually had a definition of injury to property, which was material impairment or destruction. Now, if we think that's what injury to property meant or meant at that time, at least, that it actually was an understood term that was used as material impairment. So, if we read material impairment or we read injury in 1363 to mean as the property material impairment, and that's what is the parallel to physical injury for people. How could someone commit an act that causes material impairment to property without using the type of physical force that would be covered by the 924C? Because I don't think, even assuming that 1363 uses that material impairment definition from Blacks, I don't think that that definition from Blacks is the definition that makes sense in the 924C context. Because we're not just talking, we're talking about a violent felony. We're talking about a category of felonies that are- The Supreme Court uses pain or injury as 924C as well, as to the violent crime of violence language. That's how we say what we mean by a physical force causes pain or injury. The definition of crime of violence, physical force, physical force means causes pain or injury, thinking about people at that point. And so, we have to figure out what is the equivalent of pain or injury to property. And if there is at least some evidence of an understanding at the time that material impairment would be an injury to property, as opposed to brushing up against the side of a building, or perhaps, you know, flicking a piece of paint off the side of a building. If it's material impairment, and you have to take some force, some higher level of force to cause material impairment, rather than minor intrusions of the equivalent to the touch on somebody, on a human body, then it seems to me that you don't have a problem, then, of anything under 1363's Enhancement Clause, including crimes that would not be crimes inflicting pain or injury on property. So, I think that leads to a, quite frankly, pretty bizarre outcome. There is not at common law a, I mean, the government suggests like a trespass of property is analogous to the offensive touching and issuing Curtis Johnson. But there is no common law crime on my understanding of just a trespass to like a chattel. That might be a tort if you intend to convert it. But it's, there is no common law crime of property. And so, if, I just don't think it makes sense that Congress would have adopted a definition of force against property to define a violent felony that included just essentially all property crimes, but included a huge number or excluded a huge number. That's the whole point. It's got to be material. We'll have to decide how that's defined, but it's got to be material. There's some quantum of force upon the property that has to be exercised. It could then actually have to, but could have caused material impairment. Why is that not equivalent to what has been recognized as the types of force that are against people that are sufficient to constitute crimes and violence? Because I don't, I mean, I just don't think there's a crime against property involving non-material impairment, like a common law crime against property involving force against property, but non-material impairment of force against property. I think, I think you're defining the definition of violent. Violent means a common law definition of a crime against property. We're talking here about what Congress has done in these statutes and what it meant to capture. And if the whole point is that, surely it didn't mean to capture every injury to property. I mean, if I come in and flick a piece of paint off somebody's house, they'll have a common law claim against me for whatever the damages are it costs to repaint that inch of the wall. But that doesn't say that that would be a material impairment of the type that Congress could think of as constituting physical force against property, a crime of violence against property. I mean, crime of violence, your whole argument is crime of violence has to be something more than everything that is an intrusion on that property or everything that affects or damages that property in some minor way. And so, if that's right, then we have to say, well, okay, it has to be a non-minor way, which would be a material impairment. And if it's a material impairment, it's hard to figure out how that's caused without the type of physical force that could fit within 924C's understanding, sort of map at least as a parallel onto what the Supreme Court has done thus far. So, I understand your honor's resistance to my invocation of common law, but that's not because I think that makes sense. I do, but I'm bringing it up because that's how the Supreme Court has talked about how we're thinking about the definition of force. It's rejecting the common law definition for misdemeanor assaulted force and adopting the common law definition for felony robbery. And so, I think here it doesn't make sense for the court to adopt a definition of violent force against property that is one that is associated with a misdemeanor common law and say, oh, but don't worry, we're excluding non-material injuries to property when that is like a null set. I mean, it's just not a crime. I thought if the underlying crime is 1363, so we already know what the predicate crime is. It's not common law trespass or common law injury to property, whatever that is. It's 1363, and 1363 speaks in terms of willfully and maliciously destroying or injuring. So, it seems like just leave it on injury for just a second. Willfully and maliciously destroying property seems like that's pretty significant. You're destroying property. And if you read injury in light of willfully and maliciously destroying or injuring property, then that seems like it would have to be a pretty substantial injury. It can't be a trifle. And if that's true, then that's just what 1363 bars. And if 1363 bars willfully and maliciously destroying or injuring in a way that's commensurate with willfully and maliciously destroying, then injury would be seen to be seriously impairing, seriously harming, something like that on the scale of destroying. And if that's true, then whatever you think about common law, that's just what we read. And that's the crime that we ask whether it counts as a crime of violence, meaning as an element, the use of physical force against the property. And on the side of another, we'd be talking about willfully and maliciously destroying or injuring, meaning injuring in a way that's commensurate with destroying and acting willfully and maliciously, which means a pretty serious injury. So, I think 924C requires a pretty serious injury or force that could result in a pretty serious injury. But I don't think, I think the injury courts have read 1363 to allow for cosmetic, somewhat trifling injuries. I mean, actions like graffiti. Has the court read it that way yet? I know. This court hasn't, but they're asking the question whether, and, you know, given that there was a dictionary definition at the very time this supplementation thing was enacted, and the whole 1363 was reorganized and arson moved out. So, what if this option of provision that required material impairments? Why wouldn't we read that to be what injures means here? And if we do, we have a suggestion, Russell said better than me, we have the element. And why wouldn't that element map onto the physical force required in 924C? So, I think you have to decide what injures means in this statute to understand what that element is. And if injures means any trifle, then that's, you know, I understand your argument on that front. But if that's not what the element means, or that's not the best understanding of what the element means, then it's a very different analysis as to what happens under 924C. Sure, but I think we understand what the element, I think both parties agree what the element means, which is it can include things like, I mean, material injury to me is not a substantial injury. Materiality is like, can be a very, very low standard and ask the cases. Material impairment in Blacklaw Dictionary, material impairment. So, that means, you know, impairing function, purpose, use of that piece of property. You know, and quite frankly, if you spray paint black all over a windshield so a car can't be driven, that might be material impairment. We don't have to decide that in this case, but you're really starting to look at not just, like the Supreme Court does, you look not just at the force that is done, but what is the consequence for the target of that force? And if material impairment, that seems like very similar to what we look at in the physical force upon a person area, where is it really having a force upon their body that affects their freedom of movement or their health, their well-being? And so, it just seems to me deciding what injures means. And if you want to see your, I take it you're reading this injures means sidewalk chalk on the sidewalks. Yes, I think it could mean that, but I think. That doesn't seem contextual next to destroys. I mean, just injures is clearly intended to capture something less than destroys. Right. And I think so it captures things like actions like graffiti. I think, I guess I resist your materially impairs definition, or to the extent it applies, it hovers actions like nonviolent force. Well, they think, you know, you don't destroy, but you shoot out all the windows in a house. That would be injuring. That would be materially impairing it. Yeah, but it wouldn't be the least culpable conduct. I understand. I understand. And so, we're really trying to figure out what were they capturing with injures here. It just seems to me that's what the heart of this case is, is what does injures in 1363 mean? And is there, what, sorry, what rule is it that you rely on to say that we have to understand injures to be anything that affects, touches, harms, damages property in any way? Or maybe doesn't even damage. What is your definition of injures here? So, I think my definition of injures here is any form of damage. Some of it uses damages and other statutes. Some property ones are injures and some are damages. And so, it may actually not be damages. So, I guess I don't, when I say damage, I do mean physical damage as opposed to, like, sort of damages in a more abstract, like monetary. No, no, no. I mean, there are other statutes that also talk about damage to property and punish that. All right. So, it seems to me that there's injures, and at least, again, when used in conjunction with destroys, as the Chief Judge was pointing out. When you read it in context here, and added willfully and maliciously, that it seems like we don't have to, I just don't understand what, I mean, I understand that you're reading of injures. But what statutory construction rule compels us, either compels us or shows that that's a better reading of injures in 1363 than the material impairment one? So, I guess I think it's, I mean, your Honor has offered one definition from one dictionary, which I understand. But it's not clear to me that that is, if you look at every dictionary, that's the definition that you're going to get. And just quite frankly, I think, you know, we can. I'm asking what your rule is for definition of injures. That would be, we have to consider the statute. It seems to me that's the starting point of yours. And so, we can start with the term, and then we'll look at context. If we start with the term, yours is, because you can't, if you just look at injures, you're going to get a lot of the same problem we have already, which is looking at injury to people definitions. And that's why I thought it was interesting. There was actually injury to a building definition. And so, what is, you're just doing a plain meaning of injures? I think it's a plain meaning of injures. And I also think it's notable. A lot of statutes have, like, monetary thresholds and the like. And I think the absence of a monetary threshold is a sign that this is intended to cover minor actions. But, well, it's, I mean, you're dealing with a lot of property, too, that doesn't sort of have fair market values when it's government property. So, I'm not sure. There may be a reason for not having monetary thresholds here as well. But I think plain meaning seems a little hard for injures, for the very reason I said, which is it's just, it's plain meaning is understood by people in terms of humans' impact. And that, at least nowadays, maybe it wasn't historically, we don't often talk of injury, injuring someone's property. We talk about harming it, impairing it, destroying it. But injury to property is not something that we use that commonly. And if we do, I'm not sure that there is a common, understood, plain meaning of what it is. That's why we're, at least I am in this box of trying to figure out what it means here. Yeah. I mean, I guess I have the instinct that injures to property can be very minor. I mean, we had a recent case where, in the district court, where someone was, not under this statute, but someone was finger painting in washable paint on the exterior of a, like, Degas tiny dancer in the National Gallery. And the government argued that that was sufficient to see, like, washable paint. I'm assuming you resist that.  I mean, if you have a client who urinates on public property, I'm assuming that you're going to make the argument that 1363 doesn't cover that because it didn't injure the property. Sure. But I suspect I lose, I think. Okay. But I take it, part of the reason it just seems to me is that when you have destroys juxtaposed with, injures juxtaposed with destroys. I've got the directionality right. What destroys connotes is there's some permanence to it. And so, if you think about injury in the context of destroys, it seems like the kind of injury that has some lasting dimension. Of course, there's going to be line drawing issues. I don't deny that. So, I think exactly the opposite, in fact. The fact that destroys is about permanence suggests injury might, in fact, be about impermanence. I mean, you wouldn't need the word destroy if injury covers everything anyway. So, I think, to me, the more natural way to try to think about what injury means is not to just assume away destroys and think, oh, you can physically destroy everything and just render it a non-piece of property forever. Or, if you actually touch it, that also counts. That's kind of an odd way to think about what a statute covers. So, it seems to me, because why would you talk about permanently destroying it if just touching it would be enough? So, it seems to me the way to think about injuries in the context of what destroys means and what that connotes is some kind of lasting damage. And so, there would be a question about graffiti. I mean, it takes something to remove. Graffiti is not nothing. It actually does impair property in a way. It takes something to remove it. There's other things you can do that probably don't do any kind of lasting damage at all. So, there would be lines around questions, but it seems to me that part of the question would be injury means something that has some lasting quality to it as a substantiality dimension. And then that's what we would read into 924C. I mean, you could still have an argument that that covers too much, but it just seems to me it's tougher if we think about injury through that lens, through the lens of destruction. So, I think, I mean, I guess I just resist the implications that you're taking from the word destroys. And in particular, I think any of the definitions being batted around about injuries would still mean that destroys isn't doing work because the definition of injury or adopting would cover destruction. I don't see the way of reading injury to exclude destruction. I mean, we're not considering just any old statute here. It's a criminal statute. And so, you're sort of plain text, well, it must have meant to capture everything. Makes me wonder, is that really the best rule when you're reading? If you've got at least a variety of dictionary definitions, if you've got contextual indicia, is that really how we're supposed to read? I understand why you want to do it for purposes of the 924C categorical rule. But if we set that whole paradigm aside and we just look at 1363 itself, is it normally the rule that we read where it's in criminal statutes to reach as far as humanly conceivable? No, I don't think so. But I think in some sense, Your Honor is getting at sort of if there are a bunch of definitions and it's ambiguous, we'll use the rule of lenity, which was quite frankly the way I feel like courts are applying the law. You'd want that in some of your other statutes. But when we get to categorical rules, both sides are cross purposes in this area. I get it. It's not just you. But as I said, the first thing you have to do is interpret the statute. And so it just seems to me that our first instinct wouldn't be to go for it means any possible unfortunate touching or malicious touching of property. And I'm not even sure we'd look at common law when you're talking about, you know, things within special maritime and territorial jurisdiction of the U.S. government. And I apologize. To the extent I was unclear when I was talking about the common law, what I really meant was what we're interpreting 924C. The Supreme Court has taught us that's part of how we're supposed to understand the physical force definition. Not that I was sort of arguing that for 1363. And I'm sorry. The question is where you start. But if we're starting in 1363, then. Sure. But I think that's why I think even if we accept your material impairment definition, I think that definition. To be sure, Mr. Black. Fair enough. I apologize. If we were to accept Black's definition as the definition here, my point is that I still prevail because 924C takes a different definition. And I do think there's some agreement here, though perhaps I'm mistaken. 924C requires. Sorry. Go ahead. 924C says we look at sort of what we don't look at the lowest common denominator of words in the abstract. We look at sort of the lowest common denominator of what that element covers, what it means, how it's defined. And so if it's defined in 1363, if we read it as having this meaning of requiring material impairment, you know, significant damage, whichever collection of adjectives you want to use. If we read it as something much higher than, you know, a chip in the wall, then that's what the 924C test goes on to. And then you have to ask the question of whether, well, can one take, whatever physical force it takes to accomplish material impairment of property, can that be in any sort of realistic sense a level of force that is not the physical force under 924C? So I think that's right. I think a small, and my point is that 924C requires more, but a small sort of note is you referenced like realistic, and I don't, which to me calls to mind the realistic probability test. And just for avoidance of doubt, I don't think that applies here. No, I'm saying that the spin quarter said, look, we're not going to sit here and engage in first year law school coming up with any sort of a name hypothetical we can think of on this. We sort of look at what will, what does that language capture? And if someone could, you know, after weeks of study, come up with a single hypothetical that might sort of push the envelope on crime or violence, that won't be enough. You have to have some sort of, that's what I meant by that. Okay, I think, I mean. I don't know what that said is either, as opposed to hypotheticals we do get to use, but that's what they said. I, one additional point on that, and I want to return to quickly what I was saying before. The, I think the realistic probability test, which sometimes is like, we don't get to engage in hypotheticals. The Supreme Court has said doesn't apply in the context of a federal statute, because that test came about when we were worried about federalism concerns and sort of getting ahead of what state courts were doing. And in Taylor's recent decision, the court said, no, it doesn't apply in a federal context where federal courts interpret federal statutes. But putting that aside, I do sort of want to return to my basic point very quickly. Because I do think your question suggested that you would think you agree that the graffiti example meets Judge Black's definition. And if that's. There's not much graffiti. You think I can make a little mark and a smudge in a corner? That could be very different from blacking out all the windows on a police car, so it can't be driven when a call for help comes in. Or hate graffiti or things like that could be different than, I mean, I just, I don't know. I think, I mean, I think, you know, we have, we have to think of all graffiti is. Does your position have to be all graffiti categorically as Alex? I think all graffiti or like, it's not physical force on property. No, I think all graffiti is a violation of 1363 and because there are versions of. I don't know if all I don't know if stepping up to a building and doing this with a spray can would be willfully and maliciously destroying our structure. I'm not sure that I mean, I mean, I think that's how I think that's how the statute is being used and how courts are agreeing that people who engage in graffiti, whether it's a daughter, whether it's a whole graffiti tag or words of protest. I mean, people are getting absolutely convicted under the statute for those types of actions. Not in this circuit yet. I'm going to continue talking about the Supreme Court hasn't said that if we haven't yet spoken to it, it may well be that courts. This is this is not easy, right? This is hard. This is a challenge. And it's understandable how reasonable minds could could have gotten. And as you said, the Supreme Court own test is, is clarifying evolving as it goes. And so everyone's doing their level best here, but we're, we're trying now to propose something that. That. Keeps 1363 within some sort of balance makes us narrower than than everything than every possible touch upon property, willful and malicious touch upon property. And I guess I still haven't heard a rule of construction that compels us to do. Otherwise, if one were to conclude that there's other textual and structural addition here that. Way against reading it so broadly. And since we're sitting here in the middle of territorial jurisdiction of the United States, it seems important for us to be very careful and how we say what injures means here. So, I take your point. I think I've given my thoughts on it. Are there any additional questions? Do we want to talk about disability reporting or anything? Or I'm happy to. Okay, unless we'll give you a little, we'll give you a little time for rebuttal. The government now. Yes, your honor, please the court committee for the United States claims that a 1363 violation is not a crime of violence. It's both procedurally barred and meritless and attempted to do. I would like to begin with what we would view as the simplest way to resolve this claim, which is that it is procedurally barred. What is what has been your procedural argument? As far as I can tell from your briefs, you've never once said anything about dependency of Johnson while this case was on appeal. I don't think we specifically pointed that out your honor. I think it certainly supports it. I don't think we don't view that as a necessary fact here, but it certainly. Your entire argument for procedural default. Was that justice Scalia had dissented in some decisions and therefore the defendants could have made some arguments in the trial. That same thing, and at the time of pleading guilty, but certainly justice, the fact that justice Scalia made those defense with more evidence that this was not a claim that was novel. These were claims that were being litigated that were on that score. So, let's as far as I can tell, you've never argued anything about Johnson's pendency while this case was on direct appeal. I know you use the word direct appeal in the heading of your brief and then in one sentence, but in terms of what should have been done, it was all about what could have been done in the district court. Not while it was on direct appeal, but what could have been done in the district court and on that at the time the case was originally before the district court. There was Supreme Court precedent that just flatly ruled out the claim. And I'm not aware that procedural default principles require you require 1 to preserve a claim that's flatly foreclosed by Supreme Court precedent. So, to respond on 2 levels, your honor. So, 1st, as your honor suggested, our position here is that it would, and I point to the, we believe that the Vargas Soda decision in the 5th circuit that held exactly that in the context of a Johnson Davis claim. So, that's the way procedural default works is that even a defendant is expected to flag everything that's flatly foreclosed by Supreme Court precedent just on the chance that the Supreme Court might, in the intervening period, grant cert and reverse its own. And Steve, I'm sorry, I decided this criteria is satisfied. It happened to happen here. But, and then, is that really the way procedural default works? I mean, certainly, in the context of the Supreme Court and Boosley and Murray saying that futility is in cause, and Murray specifically contemplates the idea that you can, if you want to have an attempt to convince the court to change its ruling, to seek a change in the law, you need to probably. None of those involve a situation in which a claim was foreclosed by precedent. Or foreclosed by Supreme Court precedent? Even circuit precedent. I don't think Boosley or any of those, they didn't involve a claim that had to be raised, even though, I mean, everybody, you can do the thing where you assert a claim before our court, and you put in a footnote, and you say, I know it's foreclosed by precedent, but I'm just doing it because I want to preserve it for on-bank review. I mean, I understand. But does procedural default in the criminal context really mean that criminal defendants have to flag claims before a court, even though that claim was foreclosed by precedent? Again, Your Honor, and again, I would point to, I think, the Vargas Soter decision. We find persuasive. It has an extended discussion of this. I understand that this court certainly is entitled to disagree. That's not binding authority here. What about this circuit? This circuit. It's bound by decisions of this court. We're bound by D.C. circuit prior case. Certainly not. The government, the judge, or the appellant could reasonably have anticipated Johnson. We've said that. Yes, Your Honor. And you're saying, in a procedural default context, we've said that. I think the relevance, to characterize our argument, I think, maybe more clearly, is that the ability to anticipate the specific outcome of a Supreme Court case isn't the test. The test is whether the claim was, the tools to construct the claim were available. So, this court, of course, would not have to deviate and could not deviate from something the prior panel has said. We don't view that as precluding the application of a procedural bar here. If we said no one could have reasonably foreseen this, how could we say that at the one time and at the other time say that they should have reasonably foreseen it and preserved it? The fact that they couldn't have foreseen the outcome of that case doesn't mean that the tools weren't available. No one saw this coming. No one saw, based on justice, we could all have read Justice Scalia's defense 100 times a day and still not said there is a colorable claim to present to the district courts or the courts of appeals that the procedural clause is unconstitutional, at least of ACCA. Or even more relevant here, 924C. I mean, you'd have to have a whole other leap here. So, it would have been unreasonable for them to have raised a challenge to the residual clause of 924C here and said you only have to look at the elements clause. And so, let's talk. I mean, you have to go through so many loops here and then make a whole, send a whole brief as they've had to do here trying to argue about what the elements clause means. That's your view of what should have happened here? Certainly, our view is that to the extent the appellant believed that this was, could be, that this was legally a meritorious claim, that in order to- What is this? A claim that the residual clause is void for vagueness, that that had to have been raised in order to be preserved. I would also add, I understand that we did not- I thought your argument was, the argument they're making now is that, okay. You can't do that. If you're the defense attorney, you can't just say, we think it's unconstitutional. The Supreme Court does not. The circuit does not. But we think it's unconstitutional. You can't stop there because then you would have to go. So, that means we have to look at the elements clause. And then you'd have to have a whole brief section, which, as you know from this case, could be quite lengthy on what happens with the elements clause here. And, you know, unless we're going to allow in criminal cases 200-page briefs, it's just untenable. When we say no one could have reasonably anticipated this, we nonetheless are going to sanction defendants for not reasonably anticipating it. So, I understand, Your Honor. I don't think it would require 200 words. I think it is not uncommon to see litigants preserve claims if they intend to seek further review on them in a much more concise fashion. And that wasn't done here. I would also add, though- Wait, wait, wait. Les, you can't stop there. I guess we drop a footnote or we have a one-line header preserving this for further review, but that would have been no help to them. Then they would have had to devote their time to arguing about the elements clause. Well, I also don't think it's uncommon or inappropriate for parties to make arguments in the alternative, especially if they think that one of the arguments is less likely to succeed. But that doesn't absolve them of a requirement to properly preserve it. My point is how much this elements clause discussion cannot be done briefly. Certainly not, Your Honor. I wouldn't suggest it would. Then there would have been nothing left in the brief for other issues. In any particular case, Your Honor, I mean, how much time and energy is devoted to a particular claim, I think, would come at the litigant's discretion. But I don't see that as having direct bearing on the case at all. I think the point you're right. It can come at the discretion. I think the point is if you exercise your discretion to say, I'm going to make a claim that's foreclosed by current Supreme Court precedent, and then, as Judge Millett says, actually, you don't automatically win. In this case, you've got to be more than just say that Johnson has yet to come about, and I think, actually, the residual clause is unconstitutionally vague. And then the consequence of that is this and this and this and this, and it just takes a while to spin that out. It just seems like an awful lot to expect defendants to do. It's different when it's on direct appeal. Johnson comes down, and then there's an argument, or the question actually is at least put to the litigants that this is now an open issue. That at least opens up some different avenues, because at that point, there is binding Supreme Court precedent, but the Supreme Court itself has signaled that precedent might be overruled. It's just you haven't, as far as I can tell, you've never made an argument about that. You've never said the significant moment here is what happened while it was on direct appeal. I don't believe we did specifically point that out, Your Honor. I would submit, for what it's worth, I don't think that would preclude the court from taking notice of something that clearly is a matter of judicial record. Have you forfeited that procedural bar? Certainly not, Your Honor, given that we raised the procedural bar pretty thoroughly. But, again, I think our argument on this is what it is. We could choose to do it. I'm just saying a procedural bar is not jurisdictional, so we don't have to do it. I don't think you think that, right? I mean, I don't think you could say in a brief, if you did use the word direct appeal, I'll give you that. It says direct appeal, but then it only talks about what happened in the district court. And so I don't think, suppose you had written a brief that said to us, I think you'll see that if you do the work, this is procedural defaulted on direct appeal. I don't think that would have preserved what happened on direct appeal, right, for us to go and find out when Johnson decided and then all that. You wouldn't take the position. I'm not sure, Your Honor, I've not written using that language. I don't want to venture here. And you never will. And I'm just saying that's kind of the position we're in with what you briefed, because you did not use direct appeal, but there was no explanation about any salient date on direct appeal. That was not, I acknowledge that was not in our brief, Your Honor. Again, I do think it's a matter of judicial record. It was not in our brief. I do, of course, want to also address the merits. We maintain procedural bar applies, and that's the simplest way through. Of course, we also believe the claim is meritless. And there are a number of issues that were discussed, especially in the context of the notion of how much force would be required or violent force with respect to this claim that I would like to address. And I wanted to start with some of the discussion about the relevance of the word violence here and point especially to the discussion of the term violent in Stokely. Now, of course, the Supreme Court has in Curtis Johnson and in Stokely talked about the fact that that word carries some significance. But it doesn't necessarily carry the significance that a layperson would attribute to violence when they're thinking about a violent movie or something like that. In Stokely, the Supreme Court said and pointed out that a common law of violence and force were used interchangeably and weren't focused on specific gradations. But the key distinction was the distinction that Curtis Johnson drew, which is the difference between force that's merely offensive or unwanted and force that causes injury. And we maintain that the principle of consistent uses applies very strongly in the context here, where Congress used the word physical force only once in the statute in the same phrase, applying without any distinction to both property and to persons. And we reject the idea that the Supreme Court has used different definitions of that phrase in Curtis Johnson and Stokely. Stokely made clear in its terms that it was an application of the Curtis Johnson definition of the force capable of causing injury. Sufficient to overcome a victim's resistance wasn't a new definition. That was the force required in the statute that was under examination in Stokely. And the Supreme Court said force sufficient to overcome a victim's resistance was violent force because it was force capable of causing physical pain or injury. It wasn't a new definition. It was a level of force. It was an example of force that qualified. They didn't say that that was the threshold. The threshold remained Curtis Johnson's definition. They applied Curtis Johnson in Stokely. It's not a different articulation. There's one articulation. All right, so as far as I know, property does not suffer pain. So then we're viewing the word injury. And coincidentally, the statute uses the word injury. And it seems to me whatever the 7924C, we don't get to that until we first figure out what injury, injures, destroys or injures property, to be short, means under 1363. And so how does the government define injures in 1363? The definition we propose, and I think Judge McHugh in the Bowen dissent used this drawing language from treatises and from Black's Law Dictionary, was if it harms or damages or causes substantial impairment to the use of the property. Impairment. And so I know Your Honor used I think maybe the word material impairment. I think this was substantial impairment. But I think they're driving at the same interest, those terms that Judge McHugh seized on there. And so certainly, you know, that is a definition that we would be satisfied and be comfortable with applying here. And to the extent that… Angular material impairment to the property. But I would note that, you know, to our view, that still covers something that, for instance, would require any sort of repair or restoration to the property. So I think it is… Any repair? All right. So I've got my sidewalk chalk. And I go up to any government school on a military base and willfully and maliciously make a mess with my—not sidewalk chalk—indoor chalkboard chalk on the chalkboard. And I've done it willfully and maliciously, and it was all clean and I was supposed to be writing on it. Have I injured that property by marking on it? I think to the extent that—and to Your Honor's—I think Your Honor's driving at that perhaps it could just be—it could be restored by erasing it. You just said it requires—has to be restored. Well, that's what I'm—so if that's the example of the restoration and restoring. I think that that would be certainly a difficult factual case, whether or not erasing constitutes repair or restoration. I think we're cutting—I'm sorry, Your Honor. No, yes. Oh. You're the one who used the word restore. It is. On the other hand, you said substantial material impairment. Government's okay with that. Those are not the same thing. Anything that requires restoration, which could be erasure, it could be a little soap and water, rub it with your elbow, that's all restoration, too. And that is not going to map onto a substantial material impairment test. So I'm trying—that's why I'm trying to understand which it is. I understand Your Honor's point. And it maybe requires substantial impairment that require that, you know— Substantial restoration? I don't know how many hours you want to use. Perhaps. I do think—and I don't mean to evade the particulars because I understand that that has to be on the court's mind. But I also would suggest that in any definition here, there's going to be close calls. And given that the statute at issue here specifically uses the word injury to property, to the extent that this—whatever definition that this court would fashion, if it finds hypotheticals falling below that standard, then they wouldn't be violations of 1363 in the first place. Whether or not the government even agrees with that, they wouldn't qualify as violations of 1363. So as long as injury means the same thing in 1363 as it does when we're defining what constitutes physical force in 924C, then 1363 qualifies. I don't think that has to be at all. I mean, let's assume—I'm not saying that—let's assume 1363 said, you know, significantly injures in a way that disabled permanently or for a long period of time disables use of that property. I've obviously added a lot of words. But they have, under my example, made clear that injury here is a great big deal, and it has to be really disabling of the property. We would read that phrase about injury in there to be—could be very different from whatever it means in 924C. It wouldn't matter. What we would say is, here's what the statute means, and we can't think of a way, we can't find the least common denominator that would accomplish that level of injury to property that would not constitute violent physical force under 924C. 924C could be less. We don't care. We're not interpreting that statute. So I don't think we have to say injures means the same thing here or there. I'm not sure I even know everything that it means in 924C. And I take your Honor's point, and perhaps I should—it'd be more precise to say we certainly see no reason here to interpret the term differently, as it would be used in the context— How do we interpret the statute? We don't—should we interpret this statute, which I think was written long before 924C, why should we interpret it as meaning the same thing? In the context of what constitutes injury to property? I mean, because— When was 924C adopted? I do not know offhand, Your Honor. I apologize. Was it the 1940s? I think it was after that. I agree that it was after that. 1363, the relevant provision we have now, I think 1948 or the 1940s. So I don't see any reason to think Congress would have thought parallelism. If anything, they would have thought—and I don't think this is right because 1363 is such a specialized statute. 924C would be responding to 1363 and not the other way around. But that doesn't make any sense to me either. So I don't see any reason that we have to read this to equate with 924C. That will get sorted out maybe in case law. So I wasn't sure why you said that. I said it, Your Honor, because, again, I think when Congress is using terms like willful and malicious destruction or injury to property, and then the Supreme Court is later using those same terms and even drawing those terms from a longstanding history of common law that does go back prior to 1940, we submit that is reasonable and that those circumstances to view those as meaning the same thing. I don't think 924C itself requires willful and malicious. And it says pain or injury. So it was thinking obviously about people because buildings and property don't suffer pain. And it's not clear to me that the common law definition that they were using there, because they said pain or injury, that they were giving a definitive—tell me if I'm wrong—a definitive definition of what injury to property means, even for 924C. So the Supreme Court, to Your Honor's point, has not, in Curtis-Johnson or in Stokely, was not in the context because it was under the context of the ACCA, did not have the context to look at what it means in the context of property. Right. But— So we don't have the Supreme Court saying. Well, but I was pointing more to the principle of how the Supreme Court is interpreting these words and where they were looking for the interpretation of these words. Is there a common law definition of injury to property? I think the ones that Your Honor has identified from Blacks and from the treatises that we cited are the best examples of that. And that's what—that's the definition we proposed. Do you think that the graffiti example where somebody walks up to a federal installation and just does a period on the side of the building, does that violate 1363? With paint? I think it would, yes. Injuries in the manner of disruption because? Because it would require a level of repair to get it back to what it was. It's damaged the property. Any level of—what about public urination? I think it's more questionable whether that would require any repair or whether that would—but I don't know. I think that's a more difficult call, Your Honor. I'm not aware of it being prosecuted under the statute. I think your whole argument for you to win, we have to reach something into 1363 as to what injures means that would rise to the level of having as an element physical force against the property of another that meets some relevant sense of violence. So I understand, Your Honor. And so the proposal that we have made, I understand there needs to be some limit. And our position is that that distinction—and I know Helen said this is an analogy the government drew. It's actually something we drew from—and I think it's well-established we drew from the statement—is that in the context of property trespass, unwanted contact is not sufficient. And that is analogous in the context to people of what battery would be. The lowest form of battery can just be unwanted or offensive contact. Right. So urination is not trespass. It's something more than trespass. I mean, it may also be trespass, but it's something more than that. And is that injuring—is that willfully and maliciously—and let's say it's not for protest reasons, just to make it clear that it qualifies as willfully and maliciously. And it's not just for relief reasons. Willfully and maliciously destroys or injures a structure. I think that that is a more difficult call to say that it injures the property than paint. Why is it more difficult? Because, again, I think paint would require some level of effort to restore it. It can take soap and water. I don't want to smell that stuff. I assume somebody does something in response to that with the property. It's supposed to just let it sit if it's witnessed. I think someone probably would, whether it's required or not. Again, I think we're pushing up against— But you could leave a dot on the side of the building, too, and you could think no one's going to see that. It just seems to me that it makes, in some way, a notion about what is the significance of the measures that would naturally be needed to be taken in light of the incursion on the property. That just seems like a natural conception to build in when you're talking about some act that willfully or maliciously destroys or injures property. Some things just are not going to qualify as injury to property within that context, even though they definitely incursion on the property. In some way, they definitely are. But, I mean, if someone comes to the side of a building and flips it like this, and you see some dirt coming off the side of the building, you could say, hey, that's an injury to the property because there was some loose concrete there, and there's a pebble that came out. I mean, is that a violation? Congress decided to criminalize that in 1363. And I understand Your Honor's hesitance to view the statute as reaching that far. Where I would push back a little bit is the idea of very, very minor incursions being covered by physical force and being covered by violent force because, in the context, understandably in the context of people, because that's all the ACC covers, the Supreme Court made clear that something as small as grabbing or pinching could qualify, even if it's just a fleeting moment of pain is sufficient, a fleeting injury. But they defined it not as just injury. They defined it as pain or injury. And pain and probably pain and fear and terror are only part of the recipient. I mean, isn't that pain, Your Honor? Isn't that a living being's response to injury? Right. But I'm saying it doesn't... The injury thing does not map onto property because you have to at least carve out the pain thing. And so then to get some... I think pain... I don't have property that feels pain. Unless you consider my pets property. Sorry, Your Honor. Leave aside the pets. I think pain is an example and evidence of injury in a person. And so it's not an example of an evidence of an injury of a property. But the point remains that a fleeting and minor injury is clearly sufficient, even where... I think what that misses is, sure, it's true that a trifling contact with a human being can cause pain in a way that would be seen as violence. But that doesn't mean that a trifling and fleeting contact against anything that doesn't even feel pain also meets the physical force requirement because you don't have the pain part. So if you don't have the pain... I mean, if a building could say, ouch, that hurts, then I agree with you. Then you would say the fact that one's a physical structure and one's a human being, that's established by the Supreme Court case. All I'm saying is the fact that the Supreme Court case introduces pain is not something that you can just, to use a phrase, flick away because actually that's part of the conception that makes it rise to the level of violence. Even though you could see the... I think the point is even though you could see the action as something fairly fleeting, there actually is a consequence. It causes pain to a human being. You can't say that about a building. So then I don't think you can just do the Broad Transposition and say the same contact against a building also qualifies because the Supreme Court talked about it. Well, to be clear, I don't know that it's necessarily the same contact because the Supreme Court was interested in outcomes here. But the same concept that even a very minor or fleeting injury would be sufficient is what would apply. But it causes pain. It's just hard. I mean, it's just hard to... We can parse the fine details of a Supreme Court opinion for ages. They just didn't have a case before that had to do with property. And I think everybody agrees. I mean, you agree. I think the other side agrees. Property crimes just raise a different set of considerations, and it's hard to broadly transpose what's been said. It's instructive, and we have to take it into account. But it's hard to broadly transpose what has been said to the property context. And it seems to me to be entirely reasonable to look at a statute, a federal crime that involves destruction or injury of property, and think that may require something more significant than a flick to the side of a building. I understand, Your Honor. I think we read the statute more broadly. Certainly, we would welcome an opinion that... I thought you agreed earlier that it required substantial or material. You were fine with that reading, and now you're defending the pinching the building effectively. Do you consider that substantial or material? If I go up and flip a piece of paint off the corner that no one can see, aren't they going to notice a little piece of paint off somewhere? I think I was speaking more to the hypotheticals of actually painting something on it, even if it was a very minimal object. Yes, I've got a very fine paintbrush, and I'm going to put a little dot on there that no one's going to see, and I'm betting the government's not going to even spend the resources on the bottom painting over. It's not visible, but it's the exact same as is a bigger paintbrush. To the extent it's received by the building, it's a touch. It's a fleeting touch that changes, in some microscopic way, the outside and appearance of that building in a way that is not adding value. I understand, Your Honor, and to the extent that that... When you said you would agree with substantial or material impairment reading of injuries in 1363, I am not talking about 924C, in 1363, how do you define substantial or material? One step back, I think our position, as outlined in the brief, is somewhat broader than that. It was damage or substantial impairment or use. Wait, damage? So any damage? Congress did not use the word damage here. It used it in other statutes, damage to property that is criminalized. So we cannot read this as damage. Respectfully, Your Honor, that was being... I said I was pointing the court to... It was Judge McHugh's defendant, Bowen, which is where this language was coming from, was drawing from black... But she uses a substantial adjective. I think my understanding is that... What is the government's definition of injuries in this statute? Can you just... We said injury is damage or substantial impairment to the use of the property. Damage and substantial impairment are totally different things. So you're not... So any substantial impairment is also going to be damaged. Can you have a substantial impairment that's not damaged? I'm not sure, Your Honor, but again, whether the court accepts our definition or it doesn't, I don't know... No, I just don't understand what your definition is because a substantial, if you only modify one but not the other, then you might as well throw a substantial impairment out because then you would just say damage. Well, we know it's not damage because Congress didn't use that word. It's used it in some other criminal statutes. So if the definition isn't damage, what is it and why? I mean, that is our definition. I understand Your Honor disagrees with it. What rule of law would allow us to read injuries as damage or substantial impairment? So... It's fine. I'm not... I mean, the rule of law is that those are the meanings attributed to it in common definitions such as black law, legal law. No, it does not have damage. One moment, Your Honor. I was going to pull up.  It was, I think, in... The definition of injuries. So I understand to a building. I think maybe that is the disconnect we have here is that I believe... So I see we don't in our parenthetical cite the ultimate source. That's all right. You don't need to do it here. I'm just getting kind of confused about what... No, and I understand, Your Honor. So I think, and maybe if I find it quickly, I will tell Your Honor. If I don't, I will move on. 1363 is just about property. Until the enhancement by the person, I get that. But in terms of what... But I see the result of the property action, so it's not... And I apologize. I think, okay, here we go. I think, so Judge Bowen cited the criminal damage to property definition in Black's Law Dictionary. Because I think the original origin of the terminology that has referenced that. Mr. Cagle, is there, I mean, are there any common law cases you can point to that discuss this concept of injury to property? Is there any analog that uses that term? I mean, so when Congress adopted this term, if injuring a structure conveyance for real or personal property, is there some... Is there a common law analog that can help us understand what injures means in this context? I'm not aware of a case that's parsing it beyond the language that we've cited from Black's Law Dictionary from restatements from common law, which I understand just sort of raises the next question, which is if we're saying damage or substantial impairment to property, then what do those mean? And so I'm not aware of a case that parsed it as finely as some of the questions and the hypotheticals here today. Also, the statute also speaks in terms of... If you have both. The statute also speaks in terms of attempts or conspires. And as I say, you know, somebody has an email that says, you know what, I think I might do tomorrow. I might go and spray paint a dot on the side of a building. That would be an attempt. And in order to be an attempt, it could potentially be an attempt, at some point in which it progressed to the level of an attempt. And so the fact that Congress wanted to prohibit attempted injuries also makes me think that the injury is something other than a trifle. I understand Your Honor's reading of that. But, again, we would... One other point that I think is... The law dictionary does not use damage, just so you know. As applied to a building, materially impair or destroy any part of the existing structure. I think damage makes things very confusing because that's for reasons known to Congress and not a verb that they have used in other statutes but didn't use here. So I think the word damage, then, in Judge McHugh's opinion, came from Black's law dictionary definition of injury. And he combined that with the criminal damage to property definition. Yeah, it looks like she said in 2014. Black's law dictionary. I see. Which is not what the language is written. I understand, Your Honor. Can I ask you a question about the enhancement part of it? So I think we could have a debate about how much easier you get to do life, that the life of a person was placed in jeopardy. I mean, I think the other side would say not much easier at all, and you would say actually it's quite a bit easier if we can do that. But on the question of whether we can do that, 924C speaks in terms of whether something is an element. So we can put aside there's an entire literature about divisibility and indivisibility and all that stuff, but really just 924C just asks on its text whether something is an element. And so the government's position is that for the enhancement, the fact that the building is a dwelling or the fact that the life of a person be placed in jeopardy is an element of a 1333. Yes, Your Honor. I think the clearest path to getting there is the fact that it increases the maximum penalty. It doesn't. As between the two. Oh, as between the two. As between the two. That's what I'm talking about. Well, so I think once we get to the point that the enhancement is an element. The enhancement is definitely an element. And then the question is whether it's divisible. Right. I'm just resisting using that. I get lost when we use divisible and indivisible, but that's fine. We can do that. All I'm saying is as between the building being a dwelling and the life of any person being placed in jeopardy, those are alternatives. Either of those satisfy the enhancement. The question is are those elements. The enhancement is writ large as an element, but you can instruct the element by saying you, the jurors, need to find that either the building, the dwelling, or the life of any person be in jeopardy. And actually you all don't have to agree on which one it is. You can be evenly divided on which one it is. But as long as you agree that one of them is satisfied, then you have the enhancement as an element, but each individual, one of those is not itself an element. And I apologize for using the terminology, but it's the terminology I'm familiar with. If the statute were found indivisible, that is correct. Our position is that the statute is divisible. On the question of whether it is divisible, which we have to, a court has to decide whether it's divisible. Yes. Then does the government in a 1363 case, do you actually recommend that the jury be instructed that they have to be unanimous on whether it's a building, is a dwelling, or the life of a person be in danger, one or the other, that the jury is instructed so that you have to unanimously find A, or you have to unanimously find B in order for the enhancement. They would have to be unanimous as to at least one of those. It could not be a mix with the opposition, yes. Has the government ever proposed such a jury instruction? I'm not aware of that issue, of anywhere where that issue has been litigated, and so I don't think so. I mean, this is the government's view, then it should be proposing this jury instruction in every case under this statute. I agree, Your Honor. I'm not aware of a case where that's been done. I would point to, sorry. And then in this case, well, you were going to point to something. Go ahead. I was going to point, and I understand that we would have a stronger position if that had been done. I would point, though, in the Katala decision that this court held, in that case the jury was instructed on both the substantive offense and conspiracy as in the instruction construed it as one element. And even though it was done in that very case, this court held that based on its analysis of the statute itself, there were sufficient indications of divisibility to find that the way in which it was instructed was not determined. We could do that. But I guess as between these two, the building being a dwelling and the life of the person being placed in jeopardy, the indictment in this case, the judgment in this case, they all spoke in terms of those two in the conjunctive. They said the building is a dwelling and the life of the person was placed in jeopardy, right? That's right, Your Honor. And our position is we don't reach that stage of the Mathis analysis when it can be resolved based on an analysis of the statutory text. I guess my point is if those were actually, if it's divisible, which I think is the way you want it to be, right? Divisible. Yes, Your Honor. So that each of those is an element. Then how they would be separate offenses. There would be an offense for doing this, these series of acts in a way that the building is a dwelling. And then there would be a different offense that would be doing it such that the life of a person be placed in jeopardy. Yes. So you wouldn't instruct, you wouldn't have a count that had both of those in the same count with an and. A proper charging document and jury instruction would separate them. So that itself, I mean, the fact that the government charged it in this way seems indicative, seems to indicate to me that the government itself didn't think about these as each of the elements. I think I would more characterize it as this wasn't an issue on anyone's radar. That was examined in that way as opposed to a different thinking about it. But again, I would note, I mean, our position here and I acknowledge it would be stronger if those record documents supported it, but our position and the way Mathis outlines the analysis is that what they call peaking at record documents in this case or other cases, isn't a step you reach unless you can't resolve it by analyzing the statute using common terms and common tools of statutory interpretation. And what are the common tools of statute? If you can't just be that it says or, because that's true every time you're trying to decide whether something's a means or an element. What else is there? There's no difference in the penalty. So in terms of the texting structure, we think that there are some things in our favor, the fact that it's fully offset by commas, that they comprise separate clauses. They're not modifying other elements, but we feel critical in this case, the fact that they cover element alternatives in our view, alternatives of radically distinct natures. The fact that the stuff that's bound up in each of those is pretty dramatically different. I mean, obviously they can co-exist in a case like they do in this case, but you're saying the stuff that's covered by a dwelling is just different. That's a general matter and a pretty significant matter from the stuff that's covered by the life of a person being placed in jeopardy. Yeah, yes there are and we've identified multiple reports of appeals that have engaged in analysis. Why are dwellings such a special building? I'm not aware of legislative history speaking directly to that point, but if I were to speculate your honor, I would say that, I mean, I think there's a long, longstanding principles in law of recognizing the place where someone's home, where they live as a place of maximum protection of, you know, security and safety would be what I would venture. To the building or to the person? I think to both. The statute doesn't require that. The enhancement applies if it's a dwelling. I think someone coming home and finding their house. I'm sorry. I'm sorry. I'm just sort of saying the reason dwellings there is at least my understanding, this is a bit old common law stuff is that, and robbery of a dwelling was always different and that was because, you know, you're at much greater risk of people being there. I think that's true, but I don't know. Right. And so if dwelling is there because there's a greater risk that a life will be put in jeopardy in that building than in other buildings. That's really, you got to admit sort of pretty clear. I mean, that's just, that's just why that's been treated differently through back to England. I'm sure special protection special, you know, it's a more severe crime to rather dwelling and dwelling at night. People are going to be there. It's just much greater risk from that kind of activity. Then, you know, a shed in the middle of the day, I would push back a little bit on that.  I mean, I don't, I think that might be part of that. I think the nature of it being a dwelling in a residence also carries a significant amount of weight, especially given that, especially in this context, I mean, it was purely about where people are likely to be. I mean, in the context where it's a special maritime and territory jurisdiction, and you're covering military bases, embassies, I mean, you're covering places. There are places that are, there are far more people than would be at a residence, but the statute still heightens the penalty for the residents and the dwelling. And I think that just breaks more to the nature. I agree. I think, I think the common law origins of dwelling having a special treatment are, as you said, at least in part, because there's a greater risk of people being there. And you just said it and a life of any, you add life of any person being placed in jeopardy because,  we don't want to just get dwellings. We want to get office buildings. We want to get, you know, the military bases where people are, where people are drilling or our soldiers are. We want to get the schools where the kids are. I mean, that, that, that makes sense, but that suggests that there is some connection to. I disagree, your honor, because especially because if that were true, then the dwelling wouldn't be necessary. That would be encompassed in the, in the endangering the lives of people. That was all that it was driving at. Destroyers isn't needed here either. But if a violation against it, the violation that endanger people's lives, always encompassed dwelling, then, then they wouldn't have called that dwellings. I think dwelling as a specific type of property strikes more at, if someone is not home, but returns home and their home is now gone, has been destroyed, has been damaged, has been injured, has been damaged, that that strikes a higher level, a level of harm that Congress had a special interest in, including that enhancement. That is not true for a place of work. Dwelling doesn't have that narrow a definition. Is a cardboard box in an alley that someone sleeps in a dwelling? I don't know that it has. It is in the common law. I think courts have suggested that as long as there's a person that's there, that's a dwelling, that lives in there. I don't, I don't think that that leads to a different outcome than I'm suggesting, though, your honor, whatever it is, the place that the person lives in has special significance because it's the place that the person lives in. If the person loses the place where they live in, whether or not they were there, or the place of the building gets, gets injured or damaged or is lost, whether or not they were there when it happened, it raises a different level of harm or as a different type of harm that Congress was interested in with this enhanced. I mean, the building has to be a building. So at least we're talking about buildings by definition for purpose of the enhancement, I guess, and it does seem like there could be some overlap between those two, but I understand that your point is there's enough non-overlaps, but that's why you see them, the alternates as elements rather than as just alternate. So satisfying. And I think particularly instructive for the fact that there can be some overlap. We rely on the poor circuits case in roof, which found divisible a statute that covered both the damage or destruction to religious real property or the obstruction of any person in the enjoyment of their free exercise of religious beliefs, because they found that there's such distinct natures. Of course, if someone damaged or destroyed religious property, where someone was engaged in exercise of religious beliefs, you could, you could violate both at the same time, but that isn't determinative where the natures of them are. So the language, the court uses radically distinct that they're not reasonably read as different means, but about different elements make sure my colleagues don't have additional questions. Okay. If there are no further questions, I know I'm well over time.  we would ask for all in addition for the reasons that we addressed on the other issues we didn't reach you today in our briefing that the judgment of the district court be affirmed. Thank you. Smiling. We'll give you three minutes for our level. Thank you. Your honors a couple of points. First of all, to return to our earlier discussion about the quantum of force or quantum of injury required under 1363. I just want to point and I apologize. I don't have all of this at my fingertips, but to 18 USC, 1361, which is a similar statute to 1363. And it applies to injury or depredation to property, which is generally like very serious depredation to property. And that statute has been interpreted to cover things like defacing the US Capitol, but pouring blood on it. So it encompasses relatively minor actions. Or at least, you know, I would think pouring blood on the Capitol is a serious action, but it's not a violent one. It wouldn't be a 924 C crime of violence. Depredation is, is a very serious term that like has a distinct common law meaning. Oh gosh, I'm forgetting exactly what it is, but it's like seriously. I apologize. It's like pillaging. Thank you. It's like pillaging or something. It's depredation is, is a quite serious term and in fact would be more serious than destroying you're like running around and like pillaging more villages. On maliciousness, which we also talked about and whether a malicious action can be taken against your own property. Maliciousness is a term found in arson statutes as well. And in particular in 18 USC 844, which is the statute that many courses interpreted to include one's own property. Those are the two big points I wanted to make. I know we've talked for a long time, but if there are additional questions, actually one additional point on the divisibility issue, I just want to note that the, I think the courts, some of the questions were absolutely right about how, even if the court were to adopt a distinct natures test, we would reveal under it because of sort of the reasons that animate wanting to penalize someone for injury to, or putting someone's life at risk also apply to a dwelling. But I'd also point to this court's decision in Burwell, which I think really butts up against the distinct natures test. I mean, the question was about the divisibility of the bank robbery statute and involved extortion, which has a very distinct nature from using force and violence to commit a  And nevertheless, the court found that statute to be indivisible. It is interesting on that score. There's federal statutes and that may be one. I can't remember offhand that specifically fold extortion into violence. I think there are some that were extortion is, is within something that's defined as a crime of violence. That's certainly true. I believe the sentencing guidelines do that, but that's it's both parties agreed in the court found that extortion, which can be committed by like, you know, threatening to reveal someone's indiscretions or something is not a crime of violence under nine 24 C. I thought there are, they're not statutes that define extortion to be a crime of violence. Maybe I'm wrong about that. So there are, but then it's not a crime of violence under the elements clause. It's a crime of violence because it's an enumerated offense. Right. And I'm just saying it's interesting that Congress would have thought that something gets denominated as a crime of violence would include extortion because extortion just doesn't, it doesn't connote the kinds of violence that we're normally thinking of, but Congress just decided that extortion is going to be deemed a crime of  Yes. And it's, and it happens in the context of enumerated offenses and found in things like residual clauses, which is just a category of stuff that we're not dealing with at all here. Okay. Thank you,  Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan; Millett; Rao